**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KELLY LEE JOHNSON, | No. 2:14-cv-2754-MCE-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Doc. 22) and defendant's cross-motion for summary judgment (Doc. 23). For the reasons discussed below, the undersigned will recommend the court deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

/ / /

/ / /

1

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on August 3, 2011, alleging an amended onset of disability on January 1, 2008, due to chronic pain, bipolar disorder, insomnia, and depression (Certified administrative record ("CAR") 72-73, 87-88, 103-05, 109, 183). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on April 3, 2013, before Administrative Law Judge ("ALJ") Mark C. Ramsey. In a July 1, 2013, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

1. The claimant has not engaged in substantial gainful activity since August 3, 2011, the application date (20 CFR 416.971 *et seq*).

2. The claimant has the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy, low back pain, anxiety disorder and panic attacks (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). In particular, claimant can lift/carry 20 pounds occasionally, 10 pounds frequently; she can stand/walk six hours in an eight-hour workday. She has no limitations in sitting. She is restricted to no climbing, frequently balancing, stooping, kneeling, crouching and crawling. She would be limited to working at heights and around heavy machinery based on her cervical spine radiculopathy. The claimant has the ability to perform simple unskilled work with only occasional public or fellow employee contact.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on November 19, 1959 and was 51 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since August 3, 2011, the date the application

---

process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

was filed (20 CFR 416.920(g)). (CAR 17-26). After the Appeals Council declined review on September 30, 2014, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

Plaintiff argues the ALJ erred in two ways. First, plaintiff contends the ALJ erred in his treatment of the medical opinions, leading to a failure to properly assess her residual functional capacity (RFC) and failing to utilize the services of a vocational expert (VE). Second,

1 plaintiff contends the ALJ erred in evaluating plaintiff's credibility.

### A.      Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining

1  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any
2  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,
3  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);
4  see also Magallanes, 881 F.2d at 751.

5        Here the medical evidence in the record consist of records from plaintiff's treating
6  physician, Lee Shoop, M.D., reports from two psychological consultative examiners, Sid
7  Cormier, PhD., and Lea K. Tate, Psy.D, a report from an internal medicine consultative examiner
8  Brian Dossey, M.D., and opinions from state agency-reviewing physicians M. Tambellini, M.D.,
9  and Kim Morris, Psy.D. The ALJ gave significant weight to the opinions of Drs. Dossey and
10 Tate, but little weight to Dr. Cormier's opinion.  Plaintiff objects to the ALJ's decision not to
11 credit Dr. Cormier's opinion, as well as his treatment of the other medical opinions as to the
12 limitations she asserts were included therein.

13       As to Dr. Cormier's opinion, the ALJ gave it little weight.  In so doing, the ALJ
14 reasoned "the claimant's mental condition is well controlled and it appears that Dr. Cormier's
15 opinions' are inconsistent with the medical record and overly restrictive in comparison to
16 examination findings and treatment history and based only on a snapshot of the individual's
17 functioning."  (CAR 25).

18       Dr. Cormier's opinion, as an examining professional, is contradicted by another
19 examining professional's opinion, based on independent clinical findings.  As such, the ALJ may
20 resolve the conflict, and need only provide specific and legitimate reasons for rejecting the
21 opinion.  Here, the ALJ gave specific and legitimate reasons for rejecting Dr. Cormier's opinion.
22 Specifically, the ALJ found the opinion was inconsistent with plaintiff's medical records, was
23 overly restrictive compared to the examination findings and plaintiff's treatment history.  The
24 undersigned finds these reasons supported by the record.  The ALJ determined that Dr. Cormier's
25 opinion was inconsistent with the medical records and his own examination findings.  The
26 undersigned finds that determination supported by the record.  Plaintiff only occasionally sought

medical treatment for her anxiety, and often presented herself in no acute distress. She did receive additional treatment after Dr. Cormier's examination and prior to Dr. Tate's. Therefore, the undersigned finds no error in the ALJ's decision to credit Dr. Tate's opinion over Dr. Cormier's, which is supported by the record.

### B.      Residual Functional Capacity

Plaintiff also contends the ALJ erred in failing to adopt all of the limitations from the opinions he purported to accept. She claims the ALJ failed to incorporate all of the limitations from the medical opinions into plaintiff's residual functional capacity (RFC).

In determining the plaintiff's RFC, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").

Specifically, plaintiff argues the ALJ gave significant weight to Dr. Tate's opinion as well as the State agency reviewing physician, Dr. Morris. However, plaintiff contends the ALJ failed to include in the RFC the limitations including her moderate limitations as to her ability to make judgments on simple work-related decisions, understand complex instructions, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, supervisors or coworkers, respond appropriately to usual work situations or changes in a routine work-setting, maintain attention and concentration, maintain regular attendance, complete normal workday or workweek, and perform at a consistent pace. Plaintiff contends that the ALJ tacitly rejected these restrictions as they were not incorporated in the RFC despite the ALJ giving significant weight to the medical opinions.

After examining plaintiff, Dr. Tate opined that plaintiff had mild limitations in her ability to understand, remember, and carry out simple instructions, and was moderately limited in her ability to make judgments on simple and complex work-related decisions, and to understand, remember and carry out complex instructions. As to those limitations, Dr. Tate explained that

plaintiff "displays memory problems and depression symptoms which can exacerbate the ability to understand, remember and carry out instructions." (CAR 454). She further opined that plaintiff was moderately limited in her ability to interact appropriately with others, including the public, supervisors, and co-workers, as well as respond appropriately to ususal work situations and to changes in a routine work setting. She explained plaintiff's "mood disorder and panic attacks can impact the way she interacts with the public, supervisors and co-workers. Interactions with people can be moderately difficult." (CAR 455). In addition, Dr. Tate explained that plaintiff "takes Methadone & Zolpidem on a daily basis. These medications may assist with pain & sleep but can alter her ability to function at home or in public in a meaningful way." (CAR 455).

      In reviewing the record, Dr. Morris found plaintiff was not significant limited in her ability understand and remember very short and simple instructions, but moderately limited related to detailed instructions; moderately limited in her ability to maintain attention and concentration for extended periods, her ability to perform within a schedule, maintain regular attendance, be punctual, and complete a normal workday and workweek without interruption, but not significantly limited in her ability to sustain an ordinary routine without special supervision, working in coordination with or in proximity to others, and making simple work-related decisions; not significantly limited in her ability to ask simple questions, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers, or maintain socially appropriate behavior, but moderately limited in her ability to interact appropriately with the general public; not significantly limited in her ability to be aware of normal hazards and take precautions or travel in unfamiliar places, but moderately limited in her ability to respond appropriately to changes in the work setting and setting realistic goals. (CAR 114-15). Based on those findings, Dr. Morris opined that plaintiff "is capable of understanding and remembering simple instructions/ procedures as well as work place locations. . . capable of maintaining concentration, pace and persistence for simple routines throughout a normal work day/work

week. . . . able to interact with co-workers and supervisors. . . . capable of brief public contact. . . . capable of adapting to a work environment, recognizing hazards, traveling, and setting goals independently within the framework noted above." (CAR 115)

The ALJ, in accepting those two opinions, found plaintiff "has the ability to perform simple unskilled work with only occasional public or fellow employee contact." (CAR 21). In support of that finding, the ALJ stated his interpretation of the medical opinions, including that Dr. Tate "opined that even with her psychiatric impairments, she could perform simple repetitive work. . . . [but] has moderate limitations in her ability to interact appropriately with the public, supervisors or coworkers or respond appropriately to usual work situations and to changes in routine work setting." (CAR 23).

To the extent plaintiff argues the ALJ misstated Dr. Tate's opinion, the undersigned disagrees. The ALJ is tasked with interpreting the medical opinions and determining the claimant's abilities. Dr. Tate opined plaintiff only has mild limitations in terms of understanding, remembering and carrying out simple instructions. This limitation is based on plaintiff's memory problems. As such, a reasonable interpretation of Dr. Tate's opinion, in terms of actual work abilities and limitation, is that plaintiff can perform simple repetitive work. Plaintiff's argument to the contrary is simply not supported.

Plaintiff also contends that the ALJ failed to include all of the limitations Drs. Tate, Cormier, and Morris assessed. The rejection of Dr. Cormier's opinion is discussed above. As the undersigned finds no error in the ALJ's rejection thereof, it follows there was no error in failing to include any limitations Dr. Cormier assessed in the RFC. As for Dr. Tate's and Dr. Morris' opinions, the ALJ did incorporate the limitations assessed therein. While both doctors found plaintiff had mild to moderate mental limitations, Dr. Tate only opined that her memory problems and depression can exacerbate her ability to understand, remember and carry out complex instructions which the ALJ incorporated into an RFC limitation to simple unskilled work. Similarly, Dr. Tate opined that plaintiff would have difficulties interacting with others,

which the ALJ again incorporated into the RFC limitation of working only occasionally with public or fellow employee contact.  Finally, Mr. Morris opined plaintiff was capable of understanding and remembering simple instructions and procedures, maintaining concentration, pace and persistence for simple routines throughout a normal workday/workweek, and is capable of interacting with coworkers and supervisors, but only brief public contact.  Again, those limitations are included in the RFC.  Therefore, the undersigned finds plaintiff's argument that the ALJ failed to include all limitations of medical experts is contrary to the evidence.

The parties offer arguments on conflicting cases as to whether an RFC for simple, repetitive work is sufficient to encompass moderate mental limitations in a claimant's abilities to maintain persistence and pace, relate to others, and adapt to changes in the workplace.  See Hoopai v. Astrue, 499 F.3d 1071 (9th Cir. 2007); Brink v. Comm'r of the Soc. Sec. Admin, 343 Fed. Appx. 211 (9th Cir. 2009).   However, those cases address the situation where the ALJ determined the claimant has those moderate limitations.  In this case, the ALJ did not determine plaintiff has moderate limitations in terms of persistence and pace when determining she was able to perform simple repetitive work.  Rather, no such limitation was actually opined by the medical professionals the ALJ credited.

Accordingly, the undersigned finds the RFC adopted by the ALJ is supported by substantial evidence.

### C.  Vocational Expert

Next, plaintiff argues the ALJ erred in failing to call a vocational expert (VE) to testify at the administrative hearing, and in using the Medical-Vocational Guidelines without the aid of a vocational expert.

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity.  The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy

for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[3] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may rely on the Grids when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988). The Grids do "provide for the evaluation of claimants asserting both exertional and non-exertional limitations," unless

---

[3] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

1  "a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the
2  range of work permitted by the claimant's exertional limitations." Razey v. Heckler, 785 F.2d
3  1426, 1430 (9th Cir. 1986), Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).

4  In cases where the Grids are not fully applicable, the ALJ may meet his burden
5  under step five of the sequential analysis by propounding to a vocational expert hypothetical
6  questions based on medical assumptions, supported by substantial evidence, that reflect all the
7  plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically,
8  where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the
9  ALJ is required to obtain vocational expert testimony. See Burkhart, 587 F.2d at 1341.

10  Here, plaintiff argues that based on the numerous mental limitations the medical
11  professionals found, and the ALJ should have included in the RFC, the ALJ was required to
12  utilize the services of a VE instead of relying on the GRIDS. However, as discussed above, the
13  ALJ did not err in determining plaintiff's RFC. As such, her argument as to the use of a VE is
14  not persuasive. The non-exertional limitations the ALJ included in plaintiff's RFC do not appear
15  to be sufficiently severe as to significantly limit the range of work permitted by her exertional
16  limitations, nor does she contend as much. The undersigned therefore finds no error in the ALJ's
17  decision not to call a VE to testify.

18  **D.   Credibility**

19  Finally, plaintiff argues the ALJ failed to properly evaluate and credit plaintiff's
20  testimony. As to plaintiff's credibility, the ALJ determined that plaintiff's "statements
21  concerning the intensity, persistence and limiting effects of these symptoms are not entirely
22  credible for the following two reasons." (CAR 22).

> First, the claimant's allegations, and her husband's allegations, are
> inconsistent with treatment notes that show the claimant's mental
> condition is well controlled. Treatment notes repeatedly show that
> the claimant demonstrated normal mental status examinations
> (Exhibit 1F, pgs., 24, 32, 35; Exhibit 3F, pg., 3; Exhibit 13F, pgs.,
> 9, 10).

She has no psychiatric hospitalizations. She has not been observed responding to internal stimuli. Examinations noted she was cooperative and displayed a pleasant mood (Exhibit 13F, pg., 9). She has only a mild impairment with respect to her ability to accept and remember instructions from supervisors (Exhibit 1F, pgs., 24, 32, 35; Exhibit 3F, pg., 4; Exhibit 13F, pgs., 9, 10). In July 2012, the claimant presented with noted improvement in her stress. She was less panicky and less anxious and her mental condition was well controlled (Exhibit 11F, pg., 21).

The claimant's physical condition also appears well controlled. The claimant has not sought any specialized orthopedic or neurological care even though she has headaches, had a thumb injury and complained of back, neck and shoulder problems. Progress notes show few significant physical examination findings except for some tenderness, and pain with range of motion due to degenerative changes (Exhibit 1F, pgs., 1, 5, 6). She has headaches, which are controlled with medication (Exhibit 1F, pg., 3). She had a thumb injury that is not symptomatic currently (Exhibit 2F, pgs., 84, 87). She had a shoulder injury, but there was no evidence of a rotator cuff tear, fracture or joint effusion (Exhibit 11F, pg., 4). She alleged at the hearing carpal tunnel syndrome, but there is no evidence in the record to support this allegation. Moreover, the claimant had a spinal fusion in the neck in 1992; however, she has not had an MRI done since that time (Exhibit 1F, pg., 16).

The record also reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date. The fact that the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work.

There is also evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments. The claimant alleged that she stopped working for other reasons, specifically she quit because of her work environment (Exhibit 2E, pg. 2).

Second, these allegations are inconsistent with medical opinions that show that the claimant has considerable work-related abilities. For example, consultative physician, Brian Dossey, M.D., examined the claimant on October 25, 2011, and opined that she could lift 20 pounds occasionally and 10 pounds frequently and perform frequent postural activities with limitation only to no climbing or working at heights or with heavy machinery (Exhibit 4F, pg., 3).

Consultative psychologist, Lea K. Tate, Psy.D, examined the claimant on May 21, 2013, and opined that even with her psychiatric impairments, she could perform simple repetitive work.

> She has moderate limitations in her ability to interact appropriately
> with the public, supervisors or coworkers or respond appropriately
> to usual work situations and to changes in routine work setting
> (Exhibit 13F, pgs., 3, 4).
>
> . . .
>
> Claimant's allegations are partially supported by her use of
> Methadone prescription medication and physical examination
> findings of tenderness and pain with range of motion testing.
>
> However, the weight of the evidence shows that while the claimant
> may experience some level of pain difficulties, the medical
> evidence showed that it [is] well controlled and that the claimant
> can nonetheless perform a wide range of unskilled light exertional
> work.

(CAR 22-24).

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the
> [symptom] itself, or the severity thereof. Nor must the claimant produce
> objective medical evidence of the causal relationship between the

> medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Plaintiff argues the reasons the ALJ gave were not sufficient in that they were not supported by the record. The undersigned disagrees. The reasons provided by the ALJ are that the testimony was inconsistent with the treatment notes, plaintiff's pain was well controlled, she received fairly conservative treatment, she provided other reasons for stopping work, her impairments were relatively unchanged since before her alleged onset date, and her testimony was inconsistent with the medical opinions in the record. These reasons are proper considerations of plaintiff's credibility, and contrary to plaintiff's argument are supported by the record. The undersigned finds no error.

Plaintiff drops a footnote wherein she also contends the ALJ's rejection of her husband's statements were equally inadequate. In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints). As the ALJ rejected her husbands statements for essentially the same reasons he rejected plaintiff's, the undersigned finds no error.

## IV. CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, the undersigned recommends that:

    1.    Plaintiff's motion for summary judgment (Doc. 17) be denied;

    2.    Defendant's cross-motion for summary judgment (Doc. 26) be granted; and

    3.    The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written

16

objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 22, 2016

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE